Exhibit A

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, ~~Esq.~~ (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

Attorney_s_ for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PETRA MORA, individually and as
successor-in-interest to Ivan Mora,

          Plaintiff,

     v.

CITY OF INGLEWOOD,
CHRISTOPHER CHUNG,
DARLENE QUIRARTE,
JOHN AUSMUS, and
ROBERT DOWNEY, ~~and DOES 1–10,~~

          Defendants.

Case No.: 2:24-cv-02970-SB-JPR

**FIRST AMENDED COMPLAINT
FOR DAMAGES**

1. 42 U.S.C. § 1983 Fourth
   Amendment—Excessive Force
2. 42 U.S.C. § 1983 Fourteenth
   Amendment—Denial of Familial
   Relationship
3. 42 U.S.C. § 1983 Municipal
   Liability—Unconstitutional Custom,
   Practice, or Policy
4. 42 U.S.C. § 1983 Municipal
   Liability—Failure to Train
5. 42 U.S.C. § 1983 Municipal
   Liability—Ratification
6. Americans with Disabilities Act (42
   U.S.C. § 12132)
7. Battery
8. Negligence
9. Violation of Cal. Civil Code § 52

**DEMAND FOR JURY TRIAL**

.

FIRST AMENDED COMPLAINT FOR DAMAGES

1  **COMPLAINT FOR DAMAGES**

2  COME NOW, Plaintiff PETRA MORA for her Complaint against CITY OF

3  INGLEWOOD, and CHRISTOPHER CHUNG, DARLENE QUIRARTE,

4  JOHN AUSMUS, and ROBERT DOWNEY, DOES 1-10 and hereby alleges

5  as follows:

6  **INTRODUCTION**

7      1.    This civil rights action seeks compensatory damages from

8  Defendants for violating various rights under the United States Constitution

9  and state law in connection with the fatal police shooting of Ivan Mora.

10  **THE PARTIES**

11      2.    At all relevant times, Decedent, Ivan Mora ("DECEDENT"), was

12  an individual residing in the City of Inglewood, California.

13      3.    Plaintiff PETRA MORA was the mother of DECEDENT. PETRA

14  brings this action both in her individual capacity for wrongful death damages

15  as the mother of DECEDENT and in a representative capacity as

16  DECEDENT's successor-in-interest pursuant to California Code of Civil

17  Procedure § 377.60.  PETRA seeks both survival and wrongful death

18  damages under federal and state law.

19      4.    The CITY OF INGLEWOOD ("CITY") is a government entity

20  subject to the laws existing under the laws of the State of California. CITY is

21  a chartered subdivision of the State of California with the capacity of the

22  State to be sued. The CITY is responsible for the actions, omissions, policies,

23  procedures, practices, and customs of its various agents and agencies,

24  including the INGLEWOOD POLICE DEPARTMENT, and its agents and

25  employees.

26      5.    DOES 1-10 CHRISTOPHER CHUNG, DARLENE QUIRARTE,

27  JOHN AUSMUS, and ROBERT DOWNEY ("DEFENDANT OFFICERS")

28  are duly sworn police officers specifically authorized by the CITY to perform

FIRST AMENDED COMPLAINT FOR DAMAGES

1   the duties and responsibilities of sworn law enforcement officers of the

2   CITY, and all acts hereinafter complained of were performed by each of them

3   within the course and scope of their duties, acting under the color of law, as

4   Police Officers for the CITY, and as Police Officers for the INGLEWOOD

5   POLICE DEPARTMENT. DEFENDANT OFFICERS DOES 1-10 were

6   acting with the complete authority and ratification of their principal, CITY.

7         6.    On or about September 27, 2023, Plaintiff filed comprehensive

8   and timely claims for damages with the CITY pursuant to applicable sections

9   of the California Government Code. As of the date of this filing, the claims

10  have not been rejected.

11                      **JURISDICTION AND VENUE**

12        7.    The Court has jurisdiction over Plaintiff's federal law claims

13  pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because Plaintiff asserts

14  claims arising under the laws of the United States including 42 U.S.C. § 1983

15  and the Fourth and Fourteenth Amendments of the United States Constitution.

16  This Court has supplemental jurisdiction over Plaintiff's state law claims

17  pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the

18  federal claims that they form part of the same case or controversy under

19  Article III of the United States Constitution.

20        8.    Venue in this judicial district is proper pursuant to 28 U.S.C. §

21  1391(b), because all incidents, events, and occurrences giving rise to this

22  action occurred within this district.

23                **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

24        9.    On or about September 21, 2023, Ivan Solis

25  ("DECEDENT") DECEDENT was at his residence located at 10024 Grevillea

26  Street, Inglewood, California, 90304.

27        10.   At the time, he was suffering from a severe mental health crisis.

28        11.   At the time of the incident leading to his death, DECEDENT was

                                    3

1   34 years old and had a well-documented history of mental health issues.

2       12.    The INGLEWOOD POLICE DEPARTMENT had been called to

3   DECEDENT's residence on numerous occasions prior to the incident to

4   address his mental health crises, and the officers who responded on

5   September 21, 2023, knew that DECEDENT had mental health issues.

6       13.    Without any ongoing crime, threat to safety, or justification,

7   Officer ~~DOES 1 -10~~DOWNEY and other officers ~~entered~~ approached

8   DECEDENT~~'s home~~ in an extremely aggressive manner, contrary to their

9   training and standard de-escalation tactics.

10       14.    ~~They~~ The officers did not call and wait for a mental health crisis

11   team.

12       15.    ~~DOES 1-10 improper approach to Mr. Mora~~DECEDENT was in

13   the side yard of his home when Officer DOWNEY tased him, caus~~ing~~ed an

14   escalation of the situation. DECEDENT was not armed with a knife or a gun

15   and he was separated from Officer DOWNEY and the other officers by a

16   metal fence. At the time he was tased, he did not pose a serious threat of

17   injury to anyone.

18       16.    After being tased, DECEDENT, in a state of fear, ~~attempted to~~

19   ~~flee~~retreated away from the officers by going further away from them in the

20   side yard of his home, where he posed ~~and did not pose~~ even less of ~~any~~a

21   threat to anyone~~of attack~~.

22       ~~15.~~17.    Again, the officers chose not to call and wait for the

23   assistance of a mental health crisis team.

24       18.    ~~DOES 1-10 cornered DECEDENT~~DEFENDANT OFFICERS and

25   other officers entered the residence through the car port gate and engaged

26   with DECEDENT, who then retreated further away from them into the back

27   corner of the property.

28       19.    Although he did not pose a threat of injury to anyone, Officer

1  QUIARTE tased DECEDENT Officer CHUNG deployed multiple rounds
2  from a pepper ball launcher, striking DECEDENT, and Officer DOWNEY
3  deployed at least one 40mm round at DECEDENT.
4      16.20.      Then DECEDENT attempted to flee, in reaction to the
5  overwhelming force used against him. Officer AUSMUS within the backyard
6  of his home and discharged his their firearms at DECEDENT, striking and
7  killing him, causing DECEDENT serious physical injury and eventually
8  killing him. At least one of the shots struck the back of DECEDENT's head.
9      21.    At the time of the shooting, DECEDENT did not pose an
10  immediate threat of severe bodily injury or death was not near any of to the
11  officers or any other person, He did not have a gun, and there were less
12  than lethal alternatives available to the involved deputies that were not
13  exhausted before resorting to using deadly force against DECEDENT.
14      17.22.      Further, DECEDENT posed no imminent threat of death or
15  serious physical injury to either DOES 1-10 or any other person, especially
16  since he did not have a gun and was not near anyone when he was fatally
17  shot. None of the involved deputies sustained any bodily injury during this
18  incident.
19      18.23.      DOES 1-10The officers had no information that
20  DECEDENT had committed a felony or hurt anyone.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment—Excessive Force (42 U.S.C. § 1983)**

(Plaintiff against DEFENDANT OFFICERS DOES 1-10, in their individual
capacities)

25      19.24.      Plaintiff repeats and realleges each and every allegation in
26  the foregoing paragraphs of this Complaint with the same force and effect as
27  if fully set forth herein.
28      20.25.      Plaintiff brings this claim for relief in their capacity as the

5

FIRST AMENDED COMPLAINT FOR DAMAGES

1   successor-in-interest of DECEDENT under California Code of Civil

2   Procedure § 377.30.  This claim for relief arose in DECEDENT's favor, and

3   DECEDENT would have been the plaintiff with respect to this cause of action

4   had he lived.

5        21.26.     DEFENDANT OFFICERS DOES 1-10 acted within the

6   course and scope of their employment as police officers for the Defendant

7   CITY and INGLEWOOD POLICE DEPARTMENT and acted under color of

8   state law.

9        22.27.     The Fourth Amendment of the United States Constitution,

10  as applied to State Actors by the Fourteenth Amendment, provides the right

11  of every person to be free from the use of excessive force by police officers.

12       23.28.     DEFENDANT OFFICERS DOES 1-10 failed to employ

13  tactics to de-escalate the situation, failed to give DECEDENT proper

14  commands and the time to comply with those commands, failed to give

15  DECEDENT the opportunity to cooperate with law enforcement instructions,

16  and failed to give DECEDENT a verbal warning prior to the use of their

17  tasers, pepper ball launchers, and lethal weapons deadly force even though it

18  was feasible to do so.

19       24.29.     DEFENDANT OFFICERS DOES 1-10 used excessive

20  force against DECEDENT when DEFENDANT OFFICERS DOES 1-10 used

21  force, including deadly force against him.  Defendants' unjustified use of

22  force deprived DECEDENT of his right to be secure in his person against

23  unreasonable searches and seizures as guaranteed to DECEDENT under the

24  Fourth Amendment to the United States and applied to state actors by the

25  Fourteenth Amendment.

26       25.30.     As a result of the foregoing, DECEDENT suffered great

27  physical and mental injury, fear, pain, and emotional distress up to the time

28  of his death, loss of enjoyment of life, loss of opportunity of life, loss of life,

6

1 and loss of earning capacity.

2 26.31.    The use of force was excessive and unreasonable,

3 especially because DECEDENT posed no immediate threat ~~of death or~~

4 ~~serious bodily~~of injury at the time of the officers' use of force or at any time

5 immediately prior to the officers' use of force.  ~~DECEDENT was not~~

6 ~~attempting to evade or resist by flight and n~~No warning was given prior to the

7 use of deadly force.  The Defendants were not responding to a serious violent

8 crime, they knew that DECEDENT had not attacked or injured anyone~~serious~~

9 ~~or violent crime~~, and there were several less intrusive alternatives available ~~to~~

10 ~~the DEFENDANT OFFICERS~~.  Further, ~~DOES 1-10~~DEFENDANT

11 OFFICERS's use of force violated their training and standard police officer

12 training.

13 27.32.    As a result of their misconduct, DEFENDANT OFFICERS

14 ~~DOES 1-10~~are liable for DECEDENT's injuries.

15 28.33.    Plaintiff seeks survival damages, including but not limited

16 to pre-death pain and suffering, loss of life, loss of opportunity of life, and

17 loss of enjoyment of life, under this claim.  Plaintiff also seeks attorneys'

18 fees and costs under this claim.

19 **SECOND CLAIM FOR RELIEF**

20 **Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

21 (Plaintiff against DEFENDANT OFFICERS )~~(Plaintiff against DOES 1-10, in~~

22 ~~their individual capacities)~~

23 29.34.    Plaintiff repeats and realleges each and every allegation in

24 the foregoing paragraphs of this Complaint with the same force and effect as

25 if fully set forth herein.

26 30.35.    ~~DOES 1-10~~DEFENDANT OFFICERS acted within the

27 course and scope of their employment as police officers for the Defendant

28 CITY and INGLEWOOD POLICE DEPARTMENT and acted under color of

7

state law.

31.36.    Plaintiff PETRA MORA had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with her son, DECEDENT.

32.37.    The aforementioned actions of DOES 1-10DEFENDANT OFFICERS, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiff, and with purpose to harm unrelated to any legitimate law enforcement objective.

33.38.    As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died.  DOES 1-10DEFENDANT OFFICERS thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with DECEDENT.

34.39.    As a direct and proximate cause of the acts of DOES 1-10DEFENDANT OFFICERS, Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

35.40.    Plaintiff brings this claim individually and as successor-in-interest to DECEDENT and seeks both survival and wrongful death damages for the violation of her rights.  Plaintiff also seeks attorney's fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Municipal Liability –**

8

1        **Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

2                              (Plaintiff against CITY)

3        ~~36.~~41.        Plaintiff repeats and realleges each and every allegation in

4   the foregoing paragraphs of this Complaint with the same force and effect as

5   if fully set forth herein.

6        ~~37.~~42.        ~~Defendants DOES 1-10~~DEFENDANT OFFICERS acted

7   under color of state law and in the course and scope of their employment as

8   law enforcement officers for the CITY.

9        ~~38.~~43.        The acts of ~~DOES 1-10~~DEFENDANT OFFICERS deprived

10  DECEDENT and Plaintiff of their particular rights under the United States

11  Constitution.

12       ~~39.~~44.        ~~DOES 1-10~~DEFENDANT OFFICERS acted pursuant to an

13  expressly adopted official policy or longstanding practice or custom of the

14  Defendant CITY.

15       ~~40.~~45.        On information and belief, ~~DOES 1-10~~DEFENDANT

16  OFFICERS were not disciplined, reprimanded, retrained, suspended, or

17  otherwise penalized in connection with deprivation of DECEDENT's rights.

18       ~~41.~~46.        Defendants CITY and CITY policymakers and supervisors,

19  maintained, inter alia, the following unconstitutional customs, practices, and

20  policies:

21       (a)    Using excessive and unreasonable force, including deadly force

22              on persons who do not pose a risk of imminent death or serious

23              bodily injury to others.

24       (b)    Failing to use and exhaust reasonable alternatives to the use of

25              deadly force.

26       (c)    Failing to give adequate commands and time to comply with

27              those commands.

28       (d)    Failing to give adequate verbal warning that the use of deadly

                                        9

force will be used and time to heed such a warning.

(e) Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force.

(f) The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

(g) Providing inadequate training and policies, including sustainment training, enforcement of the training when it does exist, and re-training, regarding the use of force, the use of deadly force, handling situations involving persons suffering from mental crisis, and de-escalation.

(h) Employing and retaining as law enforcement officers, individuals such as DOES 1–10DEFENDANT OFFICERS at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(i) Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including DOES 1–10DEFENDANT OFFICERS who CITY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(j) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by officers of the CITY.

(k) Ratifying unconstitutional conduct and failing to adequately discipline CITY officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with

10

1    the magnitude of the misconduct, and other inadequate discipline

2    that is tantamount to encouraging misconduct.

3    (l)    Announcing that unjustified shootings are "within policy" even

4          when they are later determined in court to be unconstitutional and

5          refusing to discipline, terminate and retrain officers involved in

6          unconstitutional conduct.

7    (m)    Encouraging, accommodating, or facilitating a "blue code of

8          silence," "blue shield," "blue wall," "blue curtain," "blue veil,"

9          or simply "code of silence," pursuant to which officers do not

10         report other officers' errors, misconduct, or crimes.  Pursuant to

11         this code of silence, if questioned about an incident of

12         misconduct involving another officer, while following the code,

13         the officer being questioned will claim ignorance of the other

14         officer's wrongdoing.

15   (n)    Maintaining a policy of inaction and an attitude of indifference

16         towards police shootings, including by failing to discipline,

17         retrain, investigate, terminate, and recommend officers for

18         criminal prosecution who participate in shootings.

19   (o)    Upon information and belief, CITY has an unofficial policy,

20         practice and/or custom of finding almost all—if not all—of its

21         officer-involved shootings to be within policy, of not disciplining

22         its officers involved in shootings, or not retraining or firing

23         officers involved in shootings, and of not recommending criminal

24         charges against their officers involved in excessive and

25         unreasonable officer-involved shootings.  As a result, officers

26         involved in excessive uses of deadly force are allowed back to

27         patrol the streets even though CITY knew, or should have known,

28         that these officers have a propensity for using excessive deadly

11

force against the citizens that the officers are supposed to protect and serve, especially against minorities and those in a mental crisis.

(p)   Upon information and belief, as a result of CITY policy, custom and/or practices, officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force.

(q)   Upon information and belief, this policy, custom and/or practice long-lasting and persistent, and existed well before DECEDENT was killed by the ~~DOES 1-10~~DEFENDANT OFFICERS.  This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against.  This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its law enforcement departments and so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability.  A significant reason that this policy, custom and/or

12

1   practice was established was to avoid CITY being liable, under a

2   theory of vicarious liability, for the uses of excessive and

3   unreasonable deadly force by its employees.  In other words,

4   there is a large financial incentive for CITY to erroneously

5   determine that most, if not all, of its officers' uses of deadly force

6   are within policy.  If CITY, through its policymakers and

7   supervisors, would admit that its officers were at fault for using

8   excessive and unreasonable deadly force, then CITY is well

9   aware of how much they would have to pay for any associated

10   litigation.

11   42.47.      By reason of the aforementioned acts and omissions,

12   Plaintiff has suffered loss of love, companionship, affection, comfort, care,

13   training, guidance, and past and future support of DECEDENT, and

14   DECEDENT endured substantial pain and suffering, loss of enjoyment of life,

15   and death.

16   43.48.      Defendants CITY had either actual or constructive

17   knowledge of the deficient policies, practices and customs alleged herein.

18   Despite having knowledge as stated above, these Defendants condoned,

19   tolerated and through actions and inactions thereby ratified such policies.

20   Said Defendants also acted with deliberate indifference to the foreseeable

21   effects and consequences of these policies with respect to the constitutional

22   rights of DECEDENT and other individuals similarly situated.

23   44.49.      By perpetrating, sanctioning, tolerating, and ratifying the

24   outrageous conduct and other wrongful acts, the CITY acted with intentional,

25   reckless, and callous disregard for the DECEDENT's Constitutional rights.

26   Furthermore, the policies, practices, and customs implemented, maintained,

27   and tolerated by the CITY were affirmatively linked to and were a

28   significantly influential force behind DECEDENT's injuries.

13

FIRST AMENDED COMPLAINT FOR DAMAGES

45.50.      By reason of the aforementioned acts and omissions of the CITY suffered pain and suffering, loss of enjoyment of life, and loss of life.

46.51.      Accordingly, the CITY is liable for compensatory damages under 42 U.S.C. § 1983.

47.52.      Plaintiff brings this claim individually and as successor-in-interest to DECEDENT, and seeks survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiffs also seek attorneys' fees and costs under this claim.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability for Failure to Train (42 U.S.C. §1983)**

(Plaintiff against CITY)

48.53.      Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

49.54.      DOES 1–10DEFENDANT OFFICERS acted under color of state law and in the course and scope of their employment as law enforcement officers for the CITY.

50.55.      The acts of DOES 1–10DEFENDANT OFFICERS deprived DECEDENT of his particular rights under the United States Constitution.

51.56.      On information and belief, the CITY failed to properly failed to properly and adequately train DOES 1–10DEFENDANT OFFICERS including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force; the use of reasonable alternatives to the use of deadly force; proper communication, proper warning; utilizing time, space, distance, cover and concealment; pre-shooting tactics, techniques, and procedures; de-escalation; dealing with situations in which a person is experiencing a mental health crisis; not waiting for sufficient assets,

14

1   equipment and personnel, including mental health crisis teams to arrive

2   before engaging in situations; controlling officer emotions and fears

3   including inadequate "warrior training" that imbues officers with irrational

4   fears about every situation and encourages excessive and unreasonable force

5   and overreacting to a situation; inappropriate "shoot/don't shoot" scenarios in

6   training that promote the use of unreasonable force; and continually assessing

7   a situation to justify every shot fired.

8       52.57.      The training policies of the CITY were not adequate to train

9   its officers to handle the usual and recurring situations with which they must

10  deal, including de-escalation techniques, the use of less than lethal and lethal

11  force, and pre-shooting tactics.

12      53.58.      The CITY has numerous officer-involved shootings

13  annually.  The CITY aware that there was a reoccurring problem with their

14  officers' shooting individuals, instead of employing proper de-escalation

15  techniques.  In other words, the CITY aware that there was a problem

16  involving numerous officer-involved shootings which could have been

17  reasonably avoided had the officers employed well-known and accepted law

18  enforcement tactics and techniques to avoid using unnecessarily and

19  excessive deadly force against these individuals by CITY employees.

20      54.59.      The CITY was deliberately indifferent to the obvious

21  consequences of its failure to train its officers adequately.

22      55.60.      The failure of the CITY to provide adequate training caused

23  the deprivation of Plaintiff's rights by DOES 1–10DEFENDANT OFFICERS;

24  that is, Defendants' failure to train is so closely related to the deprivation of

25  Plaintiff's rights as to be the moving force that caused the ultimate injury.

26      56.61.      By reason of the aforementioned acts and omissions,

27  Plaintiff has suffered loss of the love, companionship, affection, comfort,

28  care, society, training, guidance, and past and future support of DECEDENT.

15

The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of enjoyment of life, and death.

57. 62.      Plaintiff brings this claim as successor-in-interest to DECEDENT, and seeks survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiff also seeks attorneys' fees and costs under this claim.

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

(Plaintiff against CITY)

58. 63.      Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

59. 64.      DOES 1-10 DEFENDANT OFFICERS acted under color of state law and in the course and scope of their employment as law enforcement officers for the CITY.

60. 65.      The acts of DOES 1-10 DEFENDANT OFFICERS deprived DECEDENT of his particular rights under the United States Constitution.

61. 66.      Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

62. 67.      Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DOES 1-10 DEFENDANT OFFICERS inclusive ratified the acts and bases for the acts of DOES 1-10 DEFENDANT OFFICERS.  Upon information and belief, the final policymaker knew of and specifically approved of the acts of DOES 1-10 DEFENDANT OFFICERS.

63. 68.      On information and belief, CITY final policymakers knew that DECEDENT was not an immediate threat of death or serious bodily

16

FIRST AMENDED COMPLAINT FOR DAMAGES

1  injury to any person at the time of the ~~DOES 1 -10~~DEFENDANT OFFICERS
2  use of deadly force.

3      ~~64.~~69.      On information and belief, the official policies with respect
4  to the incident are that officers are not to use deadly force against an
5  individual unless the individual poses an immediate risk of death or serious
6  bodily injury to the officers or others, or if the individual has inflicted death
7  or serious bodily injury against someone or threatened to do so, the officers
8  may use deadly force to prevent the individual's escape.  The officers'
9  actions deviated from these official policies because DECEDENT did not
10 pose an immediate threat of death or serious bodily injury to the involved
11 officers or anyone.

12     ~~65.~~70.      On information and belief, the CITY approved of the
13 officers' actions after a hearing presented by the officers' legal counsel to
14 CITY supervisors after which they found the officers' actions to be within the
15 official policies of the CITY.  On information and belief, the basis for such
16 approval was based on the officers' self-serving statements that they feared
17 they would be killed or seriously injured, despite evidence to the contrary,
18 including evidence that the involved officers were never physically injured.

19     ~~66.~~71.      Upon information and belief, a final policymaker has
20 determined (or will determine) that the acts of ~~DOES 1 -10~~DEFENDANT
21 OFFICERS were "within policy."

22     ~~67.~~72.      By reason of the aforementioned acts and omissions,
23 DECEDENT suffered past and future pain and suffering, loss of enjoyment of
24 life, and loss of life.

25     ~~68.~~73.      Accordingly, the CITY is liable to Plaintiff as successor-in-
26 interest to DECEDENT for compensatory damages under 42 U.S.C. § 1983.

27     ~~69.~~74.      Plaintiff brings this claim as the successor-in-interest to
28 DECEDENT and seeks survival damages, including but not limited to pre-

17
FIRST AMENDED COMPLAINT FOR DAMAGES

1   death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiff

2   also seeks attorneys' fees and costs under this claim.

3                          **SIXTH CLAIM FOR RELIEF**

4              **Americans with Disabilities Act (42 U.S.C. § 12132)**

5                    (Plaintiff against ~~all Defendants~~CITY)

6       ~~70.~~75.       Plaintiff repeats and realleges each and every allegation in

7   the foregoing paragraphs of this Complaint with the same force and effect as

8   if fully set forth herein.

9       ~~71.~~76.       DECEDENT was a "qualified individual," with a mental

10  impairment that substantially limited his ability to care for himself and

11  control his mental health condition as defined under the Americans with

12  Disabilities Act ("ADA"), 42 U.S.C. §12131 (2).

13      ~~72.~~77.       The CITY is a covered entity for purposes of enforcement

14  of the ADA, 42 U.S.C. §12131 (2), as explained by regulations under these

15  laws.

16      ~~73.~~78.       Under the ADA, the CITY is mandated to develop effective

17  procedures for interactions with individuals with mental disabilities and to

18  ensure the protection of their personal and civil rights.

19      ~~74.~~79.       Congress enacted the ADA with the finding that individuals

20  with disabilities have been isolated and segregated, constituting a form of

21  discrimination that is a pervasive social problem. 42 U.S.C. §12101(a)(2).

22      ~~75.~~80.       The CITY is mandated under the ADA not to discriminate

23  against any qualified individual on the basis of disability in any services or

24  facilities. 42 U.S.C. §12182 (a).

25      ~~76.~~81.       The CITY and ~~DOES 1–10~~DEFENDANT OFFICERS

26  violated the ADA by: (1) failing to properly train its deputies to respond and

27  interact peacefully with individuals with mental impairments, such as

28  DECEDENT; and (2) failing to follow procedures for de-escalation and non-

                                        18
                    FIRST AMENDED COMPLAINT FOR DAMAGES

Formatted: Keep with next

1   lethal force in interactions with DECEDENT, who was experiencing a mental

2   health crisis.

3       77. 82.        As a result of the acts and omissions of the Defendants,

4   DECEDENT suffered damages, including loss of life and pain and suffering.

5       78. 83.        Plaintiff brings this claim individually and as successor-in-

6   interest to DECEDENT and seeks both survival and wrongful death damages.

7   Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

8                   **SEVENTH CLAIM FOR RELIEF**

9            **Battery (Cal. Govt. Code § 820 and California Common Law)**

10    (Plaintiff against DEFENDANT OFFICERS DOES 1-10 directly and Defendant

11                            CITY vicariously)

12      79. 84.        Plaintiff repeats and realleges each and every allegation in

13  the foregoing paragraphs of this Complaint with the same force and effect as

14  if fully set forth herein.

15      80. 85.        DOES 1-10 DEFENDANT OFFICERS acted within the

16  course and scope of their employment as police officers for the Defendant

17  CITY and INGLEWOOD POLICE DEPARTMENT and acted under color of

18  state law.

19      81. 86.        DOES 1-10 DEFENDANT OFFICERS intentionally

20  shot used force against DECEDENT multiple times.  As a result of the actions

21  of DOES 1-10 DEFENDANT OFFICERS, DECEDENT was seriously injured

22  and died.  DOES 1-10 DEFENDANT OFFICERS had no legal justification

23  for using force, including deadly force, against DECEDENT, and DOES 1-

24  10 DEFENDANT OFFICERS use of force while carrying out their duties as

25  officers was unreasonable under the circumstances.

26      82. 87.        At all relevant times, DECEDENT was not an immediate

27  threat of death or serious bodily injury to anyone, including DOES 1-

28  10 DEFENDANT OFFICERS no warning was given that deadly force was

                                19

1   going to be used prior to the use of deadly force, and less than lethal

2   alternatives were available to ~~DOES 1 -10~~DEFENDANT OFFICERS.

3       ~~83.~~88.      Defendant CITY is vicariously liable for the wrongful acts

4   of ~~DOES 1 -10~~DEFENDANT OFFICERS pursuant to section 815.2 of the

5   California Government Code, which provides that a public entity is liable for

6   injuries caused by its employees within the scope of the employment is the

7   employees' acts would subject them to liability.

8       ~~84.~~89.      Plaintiff seeks survival damages, including but not limited

9   to pre-death pain and suffering, loss of life, loss of opportunity of life, and

10  loss of enjoyment of life and wrongful death damages under this claim.

11                    **EIGHTH CLAIM FOR RELIEF**

12      **Negligence (Cal. Govt. Code § 820 and California Common Law)**

13          (Plaintiff against DEFENDANT OFFICERS directly and CITY

14  vicariously)~~Plaintiff against DOES 1-10 directly and CITY vicariously~~)

15      ~~85.~~90.      Plaintiff repeats and realleges each and every allegation in

16  the foregoing paragraphs of this Complaint with the same force and effect as

17  if fully set forth herein.

18      ~~86.~~91.      ~~DOES 1 -10~~DEFENDANT OFFICERS acted within the

19  course and scope of their employment as police officers for the Defendant

20  CITY and INGLEWOOD POLICE DEPARTMENT and acted under color of

21  state law.

22      ~~87.~~92.      Police officers, including ~~DOES 1 -10~~DEFENDANT

23  OFFICERS have a duty to use reasonable care to prevent harm and injury to

24  others.  This duty includes using appropriate tactics, giving appropriate

25  commands, giving appropriate warnings, use of de-escalation techniques, and

26  not using any force unless necessary, using the least amount of force

27  necessary, and only using deadly force as a last resort.  These duties also

28  include the ~~DOES 1 -10~~DEFENDANT OFFICERS responsibility to follow

                              20

their training and policies, the responsibility to ensure they are properly trained and equipped to perform their duties in accordance with the department policies, and properly investigate and report on their use of force incidents.

88. 93.    ~~DOES 1–10~~ DEFENDANT OFFICERS breached their duty of care.  Upon information and belief, the actions and inactions of ~~DOES 1–10~~ DEFENDANT OFFICERS were negligent and reckless, including but not limited to:

    (a)    the failure to properly and adequately assess the need to use force against DECEDENT.

    (b)    the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence and failure to utilize de-escalation techniques.

89. 94.    As a direct and proximate result of ~~DOES 1–10~~ DEFENDANT OFFICERS conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe mental and physical pain and suffering, loss of enjoyment of life, and loss of life.

90. 95.    At all relevant times, DECEDENT was not an immediate threat of death or serious bodily injury to anyone, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to ~~DOES 1–10~~ DEFENDANT OFFICERS.

91. 96.    The CITY is vicariously liable for the wrongful acts of ~~DOES 1–10~~ DEFENDANT OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employees' act would subject him or her to liability.

1    ~~92.~~97.    ~~DOES 1–10~~DEFENDANT OFFICERS negligently caused

2    physical injury to DECEDENT when ~~DOES 1–10~~DEFENDANT OFFICERS

3    ~~discharged their firearms simultaneously~~used force against ~~at~~ DECEDENT~~,~~

4    ~~striking him multiple times~~.  The use of force, including deadly force, by the

5    DEFENDANT OFFICERS was excessive, unreasonable, and the Defendant

6    Officers were negligent when they discharged their firearms at DECEDENT,

7    including pre-shooting negligent conduct, actions, inactions, and tactics, and

8    their post-shooting negligent conduct, actions and inactions.

9        ~~93.~~98.    Plaintiff brings this claim as successor-in-interest to

10   DECEDENT and seeks survival damages, including but not limited to pre-

11   death pain and suffering, loss of life, loss of opportunity of life, and loss of

12   enjoyment of life, and wrongful death damages under this claim.

13                        **NINTH CLAIM FOR RELIEF**

14                   **Violation of Cal. Civil Code § 52.1**

15       (Plaintiff against ~~DOES 1–10~~DEFENDANT OFFICERS directly and the CITY

16                              vicariously)

17       ~~94.~~99.    Plaintiff repeats and realleges each and every allegation in

18   the foregoing paragraphs of this Complaint with the same force and effect as

19   if fully set forth herein.

20       ~~95.~~100.    ~~DOES 1–10~~DEFENDANT OFFICERS acted within the

21   course and scope of their employment as police officers for the Defendant

22   CITY and INGLEWOOD POLICE DEPARTMENT and acted under color of

23   state law.

24       ~~96.~~101.    The Bane Act, the California Constitution, and California

25   common law prohibit the use of excessive force by law enforcement.

26   California Civil Code, Section 52.1(b) authorizes a private right of action and

27   permits survival actions for such claims.

28       ~~97.~~102.    On information and belief, ~~DOES 1–10~~DEFENDANT

                              22

1   OFFICERS, while working for the CITY and acting within the course and

2   scope of their duties, intentionally committed and attempted to commit acts

3   of violence against DECEDENT, including by using excessive force against

4   him without justification or excuse.

5       98.103.    When DEFENDANT OFFICERS Defendants unnecessarily

6   tased, pepper-balled and shot DECEDENT, they interfered with his civil

7   rights to be free from unreasonable searches and seizures, due process, equal

8   protection of the laws, and life, liberty, and property. They intentionally

9   deprived DECEDENT of his rights, demonstrated by their reckless disregard

10  for DECEDENT's right to be free from excessive force.

11      99.104.    On information and belief, DOES 1-10DEFENDANT

12  OFFICERS intentionally and spitefully committed the above acts to

13  discourage DECEDENT from exercising his civil rights.

14      100.105.   On information and belief, DECEDENT reasonably

15  believed that the violent acts committed by Defendants were intended to

16  discourage him from exercising his civil rights.

17      101.106.   Defendants successfully interfered with the civil rights of

18  DECEDENT and Plaintiffs.

19      102.107.   DECEDENT was caused to suffer severe pain and

20  suffering, loss of enjoyment of life, and loss of life. The conduct of

21  Defendants was a substantial factor in causing the harm, losses, injuries, and

22  damages of DECEDENT.

23      103.108.   Defendant CITY is vicariously liable for the wrongful acts

24  of DOES 1-10DEFENDANT OFFICERS under California law and the

25  doctrine of *respondeat superior* and section 815.2(a) of the California

26  Government Code.

27      104.109.   Plaintiff seeks survival damages, including but not limited

28  to pre-death pain and suffering, loss of life, loss of opportunity of life, and

1  loss of enjoyment of life, costs, and attorneys' fees under this claim.

2  **PRAYER FOR RELIEF**

3  WHEREFORE, Plaintiff requests entry of judgment in her favor against

4  Defendant CITY INGLEWOOD and ~~DOES 1–10~~DEFENDANT OFFICERS, as

5  follows:

6  1. For compensatory damages according to proof at trial, including both

7  survival damages and wrongful death damages under federal and state

8  law;

9  2. For funeral and burial expenses, and loss of financial support;

10  3. For loss of companionship;

11  4. For statutory damages;

12  5. For reasonable attorneys' fees including litigation expenses;

13  6. For costs of suit and interest incurred herein; and

14  7. For such other and further relief as the Court may deem just, proper,

15  and appropriate.

16

17  DATED: August 12, 2024~~July 24, 2024~~                **LAW OFFICES OF DALE**

18  **K. GALIPO**

19

20                                    By:   */s/*    *Dale K. Galipo*

21                                          Dale K. Galipo
                                            *Attorney for Plaintiff*
22

23

24

25

26

27

28

24

FIRST AMENDED COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff hereby submits this demand that this action be tried in front of a jury.

DATED: August 12, 2024July 24, 2024          **LAW OFFICES OF DALE K. GALIPO**

By:  /s/    *Dale K. Galipo*
　　　　Dale K. Galipo
　　　　*Attorney for Plaintiff*

25

<small>First Amended Complaint for Damages</small>